UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY J.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06431 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Timothy J. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 12; Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 12) is denied.

**BACKGROUND**

Plaintiff protectively filed his application for DIB on June 21, 2017. (Dkt. 9 at 18, 58).[1] In his application, Plaintiff alleged disability beginning May 8, 2017. (*Id.* at 18, 158). Plaintiff's applications were initially denied on August 14, 2017. (*Id.* at 71-76). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Susan G. Smith on December 17, 2018. (*Id.* at 34-57). On May 9, 2019, the ALJ issued an unfavorable decision. (*Id.* at 15-33). Plaintiff requested Appeals Council review; his request was denied on August 25, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

**LEGAL STANDARD**

**I.  District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.**   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021.  (Dkt. 9 at 20).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 8, 2017, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of "bilateral shoulder dysfunction status-post surgeries." (*Id.* at 21). The ALJ also found that Plaintiff's medically determinable impairments of carpal tunnel syndrome, hypertension, metabolic deficiency, and transient viral infection were non-severe and that Plaintiff's claimed "spinal problems" did not constitute a medically determinable impairment. (*Id.* at 21-22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22). In particular, the ALJ considered the requirements of Listing 1.02 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff "could occasionally reach overhead bilaterally and occasionally push or pull with the right upper extremity." (*Id.* at 23). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing his past relevant work as a security guard. (*Id.* at 28).

In the alternative, at step five, the ALJ relied on the VE's testimony to conclude that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing the work of a police clerk. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

**II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that "[t]he ALJ's RFC determination is unsupported by substantial evidence because she failed to properly consider the opinion evidence which led to a failure to incorporate reaching limitations as opined by all of the functional medical opinions in the record." (Dkt. 13 at 3). The Court is not persuaded by this argument, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC

without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, Plaintiff contends that the ALJ "fail[ed] to incorporate reaching limitations as opined by all of the functional medical opinions in the record." (Dkt. 13 at 3). However, this argument is based on a faulty factual premise. Orthopedic surgeon Dr. Lawrence Wiesner performed independent medical examinations of Plaintiff on February 2, 2018, and July 20, 2018. (Dkt. 9 at 601-04, 612-15). On February 2, 2018, Dr. Wiesner opined that Plaintiff was capable of working "with restrictions of no lifting, pushing, pulling greater than 25 lbs, no overhead lifting, no repetitive use of right hand." (*Id*. at 603). On July 20, 2018, Dr. Wiesner issued a similar opinion, indicating that Plaintiff's "[w]ork restrictions would be no lifting, pushing or pulling greater than 20 lbs not repetitively and no overhead lifting, no repetitive use right hand." (*Id*. at 614). In neither of these opinions did Dr. Wiesner state that Plaintiff had reaching restrictions.

In an attempt to reconcile Dr. Wiesner's opinions with his contention that all of the functional medical opinions of record contained reaching limitations, Plaintiff asserts without citation, in a footnote, that "repetitive use of a hand would inherently require reaching to grab, push, or pull whatever item he would then manipulate or handle." (Dkt. 13 at n.18). Plaintiff fails to explain the basis for this assertion, and it is incorrect on its face—there are countless work scenarios in which an individual could be called upon to repetitively use his hands on objects already within his reach (and, conversely, in which an individual could be called upon to reach for objects but not handle or manipulate them in a repetitive fashion). This is undoubtedly why medical professionals distinguish between

these two abilities in making functional assessments, and frequently reach different conclusions regarding a patient's abilities in each. *See, e.g., Monserrate B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-700-DB, 2021 WL 2587249, at *4 (W.D.N.Y. June 24, 2021) (medical examiner "opined that Plaintiff had mild limitation in repetitive use of the hands and moderate limitation in reaching"). Dr. Wiesner is an orthopedic surgeon with experience in performing functional assessments—if he had found that Plaintiff had a reaching limitation, he would have included such limitation in his report.

Further, because the medical opinions of record offered differing conclusions with respect to Plaintiff's ability to reach, it was the ALJ's function to resolve the conflict. *See Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . . In so doing, the ALJ may choose between properly submitted medical opinions." (quotation omitted)). Here, the ALJ appropriately reconciled Dr. Wiesner's assessments, which contained no reaching limitations, and the other medical opinions of record, which varied with respect to Plaintiff's ability to reach. (*See, e.g.,* Dkt. 9 at 268 (Dr. Harbinder Toor opined on July 19, 2017, that Plaintiff had a "moderate to marked limitation" in reaching), 461 (Dr. Ronald Gonzalez opined on December 7, 2018, that Plaintiff could never reach in any direction with either of his hands), 449 (Dr. Clifford Ameduri opined on September 23, 2018, that Plaintiff could never reach overhead but could occasionally reach in all other directions)); *see Matta*, 508 F. App'x at 56 (an ALJ's RFC finding is not required to "perfectly correspond with any of the opinions of medical sources" cited in the decision). In other words, without the unsupported spin that Plaintiff

has put on Dr. Wiesner's opinion, there is no basis to conclude that the ALJ improperly relied on her own lay opinion in assessing Plaintiff's ability to reach.

The Court is further unpersuaded by Plaintiff's more general attacks on the ALJ's decision-making process. First, Plaintiff contends that the ALJ gave undue weight to the evidence of record showing that Plaintiff improved after his surgical procedures and physical therapy and that other evidence supported the conclusion that Plaintiff has limited reaching abilities. (Dkt. 13 at 24). The Court does not doubt that the ALJ could have concluded, based on the record before her, that greater limitations on reaching were warranted. However, "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*.'" *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) and emphasis in original); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citation omitted)). Here, Dr. Wiesner's opinions and the medical evidence of record documenting Plaintiff's post-surgical improvement provide the necessary support for the ALJ's determination.[2]

---

[2] The Court is unable to follow Plaintiff's argument that the ALJ erred in noting that Plaintiff, after surgery and physical therapy, "consistently demonstrated good strength in his upper extremities." (*See* Dkt. 9 at 25-26). Plaintiff argues that he had reduced strength in the summer of 2017 and that "[t]o the extent he may have subsequently demonstrated normal strength, it should be noted that Plaintiff had undergone extensive physical therapy." (Dkt. 13 at 28). Plaintiff does not explain why he thinks it is significant that his physical therapy contributed to his improved condition, nor is it apparent to the Court. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("Of course, a remediable impairment is not disabling.").

Plaintiff further argues that the ALJ improperly relied on "Plaintiff's ability to drive, shop, exercise, go out socially, and accomplish some household and personal care tasks" in assessing his RFC. (Dkt. 13 at 25-26). However, the ALJ did not, as Plaintiff suggests, rely on Plaintiff's activities of daily living to conclude that he was capable of substantial gainful activity on a sustained basis. Instead, the ALJ noted that Plaintiff's reported daily activities were inconsistent with the extreme limitations identified in some of the medical source opinions of record. (*See, e.g.,* Dkt. 9 at 25-26 (Dr. Gonzalez's opinion that Plaintiff could never reach, push, or pull with either arm was inconsistent with Plaintiff's activities of daily living, including driving and performing some household tasks; Dr. Ameduri's opinion, which included a limitation that Plaintiff could only stand or walk for one hour at a time, was inconsistent with Plaintiff's activities of daily living)). This was not error on the ALJ's part. *See Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014) (ALJ appropriately considered fact that physician's "restrictive assessment" was inconsistent with, among other things, the plaintiff's "testimony regarding her daily functioning").

Plaintiff also argues that the ALJ gave undue weight to his statement that he was able to reach in all directions with his left arm. (Dkt. 13 at 26). Plaintiff notes that he also testified that it "bothered" him to reach overhead and that "his left arm gets fatigued a lot and he still had pain in it every day." (*Id.*). Plaintiff claims that the ALJ ignored these aspects of his testimony, relying only on the portions that supported the RFC finding. (*Id.*). However, the ALJ expressly noted that Plaintiff "testified that he could reach in all directions with his left arm <u>but has pain and fatigue</u>." (Dkt. 9 at 23 (emphasis added)). In

other words, the ALJ acknowledged the testimony Plaintiff contends she ignored. Further, the ALJ did not simply rely on Plaintiff's statement that he was capable of reaching in all directions with his left arm in analyzing his RFC; instead, as discussed above, her conclusion is supported by both Dr. Wiesner's opinions and the substantial evidence of record showing that surgery and physical therapy were largely able to restore Plaintiff's upper extremity strength.

It was ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). For the reasons discussed above, the ALJ reasonably concluded that Plaintiff failed to meet his burden in this case. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                    ELIZABETH A. WOLFORD
                                                    Chief Judge
                                                    United States District Court

Dated:       February 2, 2022
                Rochester, New York